UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TRAYSHAUN PERNELL, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:25-CV-11-PPS-JEM |
| RON NEAL, et al., | |
| Defendants. | |

OPINION AND ORDER

Trayshaun Pernell, a prisoner without a lawyer, filed a complaint under 42 U.S.C. § 1983.[1] (ECF 6-1.) Under 28 U.S.C. § 1915A, I must screen the complaint and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Pernell is proceeding without counsel, I must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

---

[1] Pernell's original complaint was not signed in accordance with Federal Rule of Civil Procedure 11. (ECF 1.) After being alerted to this deficiency he signed the complaint; however, due to a scanning error at the prison several pages were missing. (ECF 6.) The clerk has since received the paper copy of the signed complaint, which is a complete document, and has updated the docket accordingly. (ECF 6-1.)

Pernell is an inmate at Indiana State Prison. He describes a tragic set of events occurring on or about January 14, 2023, when a fire broke out in cell A252 on the north side of A cellhouse. The man inside the cell began screaming, but no officers came. Pernell and other inmates also began yelling for the guards. After what he estimates at approximately 20-30 or minutes, Lieutenant Nadine Smith, Officer Darnell Crockett, and Sergeant Jeniene Walton arrived. He explains that it was "count time," meaning that a headcount of inmates in the cellblock was being conducted, and he claims the officers were in an office somewhere in the prison "awaiting count to clear."

When the officers arrived, they were allegedly "unprepared" to address the fire. By his account, they ran around frantically trying to find a working fire extinguisher (without success) and to open the door to cell A252, but the door had warped due to the heat. He claims he and other inmates were demanding to be let out of their cells, but the officers continued their efforts to open the door of the cell that was on fire. One of the officers yelled for them to put on their COVID masks to protect them from the smoke. Unfortunately, the inmate in cell A252 died before the fire could be put out.

After the fire was extinguished, the officers "were authorized by someone" to begin letting inmates out of their cells. Lieutenant Dennis Koen and Jacqueline Mayes directed the inmates to leave the building and go to a nearby recreation building.[2] Pernell told them he was experiencing difficulty breathing and other symptoms from

---

[2] He does not include Ms. Mayes' title or explain her role at the prison. I note that he also mentions interacting with officers named Dugan and Cross, but he does not include these individuals as defendants.

the smoke and needed to be seen by medical staff. He claims their only response was that he should go to the recreation building and wait. Pernell and the other inmates remained in the recreation building for approximately three hours while the officers conducted a count of the inmates. He claims he repeated his requests for medical care to Officer Crockett, Sergeant Walton, Lieutenant Koen, Ms. Mayes, Lieutenant Smith, Sergeant Lee (first name unknown), and Captain McCain (first name unknown) while he was in the recreation building, but was allegedly told that they would have to "get to my medical issue later." He claims he and the other inmates were ultimately returned to their cells without getting any medical attention.

He claims that because of the lack of prompt medical attention, to this day he "randomly" experiences physical symptoms from the fire, including shortness of breath, lower back pain "from crouching in my cell trying to get away from the smoke," headaches, and an inability to "run … distances." He also claims to suffer from night terrors, difficulty sleeping, and other psychological injuries from having witnessed the fire. Based on these events, he seeks monetary damages from multiple defendants.

### Response To Fire

Pernell first alleges claims against the officers who responded to the fire. Under the Eighth Amendment, prisoners cannot be subjected to cruel and unusual punishment. *See Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Id.* at 834. The objective prong asks whether the alleged deprivation or condition of confinement is "sufficiently serious" that a prison employee's act or omission resulted "in the denial of

3

the minimal civilized measure of life's necessities." *Id.* (cleaned up). On the subjective prong, the prisoner must allege that the defendant acted with deliberate indifference to his health or safety because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Id.* (cleaned up). "[N]egligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to assert an Eighth Amendment violation. *Hildreth v. Butler*, 960 F.3d 420, 426 (7th Cir. 2020). Instead, the inmate must allege "a culpability standard akin to criminal recklessness." *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021).

The circumstances Pernell describes are disturbing, but his allegations that the officers were unprepared and acted incompetently when responding to the fire suggest negligence, not deliberate indifference. He claims there was a delay in their arrival to the area that was on fire, but I cannot plausibly infer from what he has alleged that they knew there was a fire and deliberately turned a blind eye to inmates' safety. *See LaBrec v. Walker*, 948 F.3d 836, 841 (7th Cir. 2020) (to be deliberately indifferent prison employee "must have actual, not merely constructive" notice of the risk of harm). He asserts that they should have heard the inmates yelling, but "putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened . . . that *might* be redressed by the law" is not enough to state a claim under federal pleading standards. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original).

Instead, it appears from his account that the officers were not in the immediate vicinity of the cell that caught fire, but when they arrived and saw what was happening

4

they frantically attempted to free the inmate inside the cell, albeit unsuccessfully. It can also be discerned from his allegations that their efforts were hampered by factors beyond their control, including the lack of working fire extinguishers and cell doors that could not properly withstand heat. He claims they should have evacuated him and the other inmates immediately, but it is clear from his allegations that in those frantic moments the officers focused their efforts on getting inside the cell that was on fire. This may not have been the best approach, but "the mere failure . . . to choose the best course of action does not amount to a constitutional violation." *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002). He has not plausibly alleged that the officers acted with a mental state akin to criminal recklessness in responding to the fire.

The circumstances he describes might suggest negligence, and he expressly states that he is pursuing claims for negligence and negligent infliction of emotional distress under Indiana law. However, his state law claims trigger application of the Indiana Tort Claims Act. IND. CODE § 34-13-3 *et seq.* The Tort Claims Act prohibits tort suits against government employees personally for conduct within the scope of their employment. *See* IND. CODE § 34-13-3-5(b); *see also Ball v. City of Indianapolis*, 760 F.3d 636, 645 (7th Cir. 2014) ("Under the Indiana Tort Claims Act, there is no remedy against the individual employee so long as he was acting within the scope of his employment."). "If an alleged action is within the general scope of an individual's authority, it is authorized within the meaning of the Tort Claims Act, regardless of whether it was done negligently or with improper motive." *Reiner v. Dandurand*, 33 F.Supp.3d 1018, 1032 (N.D. Ind. 2014) (cleaned up). It is clear from the complaint that

5

these defendants were acting within the scope of their employment as correctional officers when they responded to the fire. Under state law, they are shielded from personal liability. *Ball*, 760 F.3d at 645.

The Tort Claims Act permits a litigant to sue the individual's employer, which in this instance would be the Indiana Department of Correction ("IDOC"). IND. CODE § 34-13-3-5. Pernell does not name the IDOC as a defendant, although he does name IDOC Commissioner Christina Reagle in her official capacity, which is the same thing. *See Fritz v. Evers*, 907 F.3d 531, 533 (7th Cir. 2018) ("[A] state official (in his official capacity) *is* the state."). However, in federal court, states and their agencies enjoy Eleventh Amendment immunity. *Burrus v. State Lottery Comm'n of Ind.*, 546 F.3d 417, 420 (7th Cir. 2008) ("[S]tate agencies, as arms of the state, are immune from suit under the Eleventh Amendment."). Therefore, his allegations do not state a claim for relief.

### Denial of Medical Care

He next asserts claims against the responding officers, as well as Lieutenant Koen, Ms. Mayes, Sergeant Lee, and Captain McCain, for denying him medical care after the fire. Inmates are entitled to adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a claim for the denial of this right, a prisoner must allege: (1) he had an objectively serious medical need; and (2) the defendant acted with deliberate indifference to that need. *Farmer*, 511 U.S. at 834. A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious even a lay person would recognize as needing medical attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Inmates are "not

6

entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019) (citation omitted), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Id.*

Pernell claims to have been suffering the effects of smoke inhalation after the fire, including having difficulty breathing. He asserts that he reported his need for medical attention to many officers but they brushed off his concerns. It does not seem unreasonable for the officers to have initially focused on evacuating and taking count of the inmates in the cellhouse, but Pernell claims that no one took steps to have him evaluated by medical staff even after the emergency was over. He has alleged enough to proceed further on a claim for the denial of medical care in violation of the Eighth Amendment.

### **High-Ranking Officials**

Finally, he sues high-ranking officials for the circumstances leading to the fire. He asserts that the actions and inaction of Commissioner Reagle, Warden Ron Neal, Assistant Warden Dawn Buss, Major Douglas Wardlow, the prison's safety hazard manager, Deborah Taylor, and the prison's supervisor of fire training, Gordon Beecher, made the cells in the A cellhouse highly dangerous. Among other things, he points to the fact that most of the fire extinguishers in the cellhouse were either empty or inoperable; there were few fire drills performed by staff or inmates; the cell doors had to be manually unlocked and could not withstand heat; there were no emergency call buttons inside the cells; and the cell walls contained layers of paint, which provided

fuel for a fire should one break out. He claims the officials were on notice of these dangerous conditions because of the multiple fires that had occurred at ISP in the past 10 years, in which inmates were injured and in some instances killed, as well as regular dormitory meetings in which concerns about fire-readiness were routinely raised by inmates. He claims these officials had the ability to alter these conditions or move inmates out of that area but failed to act.

The Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee the safety of inmates." *Farmer*, 511 U.S. at 832-33 (citation omitted). To establish an Eighth Amendment violation, an inmate must show that a defendant was deliberately indifferent to "an excessive risk" to his health or safety. *Sinn v. Lemmon*, 911 F.3d 412, 419 (7th Cir. 2018). This requires satisfying two components: "(1) the harm to which the prisoner was exposed must be an objectively serious one; and (2) judged subjectively, the prison official must have actual, and not merely constructive, knowledge of the risk." *Id.* (cleaned up). On the second prong, the plaintiff must establish that "the defendants had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from [their] failure to prevent it." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (citation omitted).

As a preliminary matter, Pernell states that he is suing these officials in both their official and personal capacity. However, suing a state official in his or her official capacity is the same as suing the state itself, *Fritz*, 907 F.3d at 533, and a state is not a "person" that can be sued for constitutional violations under 42 U.S.C. § 1983. *Will v.*

8

*Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989). Additionally, a claim for damages against the state is barred by the Eleventh Amendment. *Burrus*, 546 F.3d at 420.

That leaves the possibility of suing these officials in their personal capacity. There is no general *respondeat superior* liability under 42 U.S.C. § 1983, and these officials cannot be held liable for damages simply because they oversee operations at the prison or within the IDOC. *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018); *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). However, they may be held liable if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir 2019) (citation omitted). Additionally, "[i]ndividual defendants . . . who are responsible for setting prison policy, can be held liable for a constitutional violation if they are aware of a systemic lapse in enforcement of a policy critical to ensuring inmate safety yet fail to enforce that policy." *Sinn*, 911 F.3d at 423 (cleaned up). Knowledge may reasonably be inferred when a condition is so pervasive that high-ranking officials were "bound to have noticed" it. *Smith v. Sangamon Cty. Sherriff's Dep't*, 715 F.3d 188, 192 (7th Cir. 2013) (citation omitted).

Giving Pernell the inferences to which is entitled at this stage, he has plausibly alleged that the above officials were bound to have noticed the serious danger of fire in the A cellhouse and yet did not take steps to keep inmates safe. As a result, he suffered physical and emotional injuries. He has alleged enough to proceed further on a claim for damages against these officials for deliberate indifference under the Eighth Amendment.

For these reasons, the court:

(1) GRANTS the plaintiff leave to proceed against Lieutenant Smith, Officer Crockett, Sergeant Walton, Lieutenant Koen, Ms. Mayes, Sergeant Lee, and Captain McCain in their personal capacity for money damages for denying him medical care for injuries he suffered in a January 2023 fire in violation of the Eighth Amendment;

(2) GRANTS the plaintiff leave to proceed against Commissioner Reagle, Warden Neal, Assistant Warden Buss, Major Wardlow, Deborah Taylor, and Gordon Beecher in their personal capacity for monetary damages for deliberate indifference to the risk of harm posed by a fire that occurred in January 2023 in violation of the Eighth Amendment;

(3) DISMISSES all other claims;

(4) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Warden Ron Neal, Commissioner Christina Reagle, Assistant Warden Dawn Buss, Major Douglas Wardlow, Jacqueline Mays, Lieutenant Dennis Koen, Lieutenant Nadine Smith, Officer Darnell Crockett, Sergeant Jeniene Walton, Sergeant Lee (first name unknown), Captain McCain (first name unknown), Deborah Taylor, and Gordon Beecher at the Indiana Department of Correction and to send them a copy of this order and the complaint (ECF 6-1) pursuant to 28 U.S.C. § 1915(d);

(5) ORDERS the Indiana Department of Correction to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent this information is available; and

     (6) ORDERS Warden Ron Neal, Commissioner Christina Reagle, Assistant Warden Dawn Buss, Major Douglas Wardlow, Jacqueline Mays, Lieutenant Dennis Koen, Lieutenant Nadine Smith, Officer Darnell Crockett, Sergeant Jeniene Walton, Sergeant Lee (first name unknown), Captain McCain (first name unknown), Deborah Taylor, and Gordon Beecher to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

ENTERED:  February 24, 2025.

                                                         /s/   Philip P. Simon  
                                                         PHILIP P. SIMON, JUDGE  
                                                         UNITED STATES DISTRICT COURT